IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TINA MARIE STITZLEIN,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | CASE NO. 1:25-cv-808<br><br>DISTRICT JUDGE<br>BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Tina Marie Stitzlein filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In July 2022, Stitzlein filed applications for disability insurance benefits and supplemental security income, alleging a disability onset date of May 9,

2022.[1] Tr. 17. In her applications, Stitzlein claimed disability due to rheumatoid arthritis, fibromyalgia, radiculopathy, spinal stenosis, and neuropathy. Tr. 285. The Social Security Administration denied Stitzlein's applications and her motion for reconsideration. Tr. 59–60, 85, 96. Stitzlein then requested a hearing before an Administrative Law Judge (ALJ). Tr. 130.

In February 2024, an ALJ held a hearing, during which Stitzlein and a vocational expert testified. Tr. 35–58. In April 2024, the ALJ issued a written decision finding that Stitzlein was not disabled. Tr. 17–29. The ALJ's decision became final on March 17, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Stitzlein filed this action on April 22, 2025. Doc. 1. She asserts the following assignments of error:

> 1. Whether the ALJ erred by assessing an RFC which does not address the Fuchs' Corneal Dystrophy that she found severe at Step 2.

> 2. Whether the ALJ failed to properly evaluate Plaintiff's allegations in accordance with SSR 16-3p.

Doc. 9, at 3.

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

**Evidence**

*Personal and vocational evidence*

Stitzlein was 51 years old on her alleged disability onset date. Tr. 28. She obtained a GED and last worked in 2022. Tr. 286.

*Relevant medical evidence*

In September 2021, Stitzlein visited her family medicine office and reported a flare-up of her back pain. Tr. 419. She took Ibuprofen and Tylenol, which provided some relief. Tr. 419. Stitzlein denied radiating pain, numbness or tingling, loss of feeling, or leg weakness. Tr. 419. On exam, she had lumbar spine tenderness but no swelling or deformity, a normal range of motion, full strength, normal coordination, and a normal gait. Tr. 419. Straight-leg raise testing was negative. Tr. 419.

In December 2022, Stitzlein saw James Gatton, M.D., for a consultative exam. Tr. 447–54. Stitzlein described back pain that occasionally radiated down her legs. Tr. 453. She also reported knee pain. Tr. 453. She denied weakness, numbness, or lack of coordination. Tr. 453. On exam, Stitzlein's visual acuity was 20/25 in the left eye and 20/25 in the right eye with correction.[2] Tr. 453. Stitzlein's pupils were "round and reactive to light and

---

[2]    "The visual acuity test is used to determine the smallest letters you can read on a standardized chart … or a card held 20 feet (6 meters) away." *See* https://medlineplus.gov/ency/article/003396.htm    [https://perma.cc/J7MA-KM4E]. "Visual acuity is expressed as a fraction. The top number refers to the distance you stand from the chart. This is often 20 feet (6 meters). The bottom number indicates the distance at which a person with normal eyesight could read the same line you correctly read." *Id*. "For example, 20/20 (6/6) is

accommodation," her extraocular movements were intact, and her visual fields were "full to confrontational testing." Tr. 454. Stitzlein was able to get on and off the exam table unassisted and without difficulty and she walked without using an assistive device but with a "hobbled gait." Tr. 453–54. She was able to heel-and-toe walk, walk on her heels, and walk on her toes. Tr. 454. She could not hop or squat. Tr. 454. Stitzlein exhibited full upper and lower extremity strength and normal reflexes and sensation. Tr. 454. She had a reduced range of motion in both hips and in her lumbar spine. Tr. 450–51. Dr. Gatton concluded that Stitzlein could walk for three to four hours in an eight-hour day and could "probably" be on her feet for a combined total of three to four hours. Tr. 454. Stitzlein could "probably" carry less than 10 pounds frequently and more than 20 pounds occasionally. Tr. 454. Dr. Gatton also wrote that Stitzlein had "limitations" with crawling, kneeling, crouching, climbing, stooping, and bending. Tr. 454.

In March 2023, Stitzlein saw Richard Marquardt, O.D., at Ohio Eye Associates. Tr. 458. Stitzlein reported blurred vision and eye dryness. Tr. 458. She also said that she avoided bright lights and going out at night. Tr. 458. Stitzlein's eye exam showed that she had "Map-Dot Fingerprint Changes" in both corneas and "Few Scattered Vacuole" in both lenses. Tr. 460. Dr.

---

considered normal. 20/40 (6/12) indicates that the line you correctly read at 20 feet (6 meters) away can be read by a person with normal vision from 40 feet (12 meters) away." *Id*.

Marquardt diagnosed Fuchs' corneal dystrophy[3] in both eyes. Tr. 460. He advised Stitzlein to call immediately if she experienced "new distortion, blurring, decreased vision or eye pain." Tr. 461. She was to monitor her condition and return in one year. Tr. 460. Dr. Marquardt prescribed corrective eyeglasses for Stitzlein's presbyopia (blurriness of near objects) and hyperopia (farsightedness). Tr. 461.

In July 2023, Stitzlein visited her family medicine office complaining of joint pain. Tr. 471. At the time of her visit, Stitzlein had pain in her lower back and right knee, which had flared up a month or two before the visit. Tr. 471. Her exam findings showed tenderness in her lower back and right knee. Tr. 471. She had a normal range of motion, a normal gait, and negative straight-leg raise testing. Tr. 471–72. Stitzlein was assessed with multilevel degenerative disc disease, positive ANA (antinuclear antibody), chronic bilateral lower back pain without sciatica, and chronic knee pain, for which she was prescribed lidocaine pain patches. Tr. 472. The provider also administered a steroid injection intramuscularly. Tr. 472.

Two days later, Stitzlein had a rheumatology appointment. Tr. 466. She reported pain in her right knee, right hip, and lower back. Tr. 466. She also reported fatigue, dry eyes and mouth, joint pain, a rash, and weakness. Tr.

---

[3]     Fuchs' corneal dystrophy is a disease of the cornea in which cells gradually die, fluid builds up, and the cornea becomes thickened, effecting vision. *See* https://www.lei.org.au/services/eye-health-information/fuchs-dystrophy/ [https://perma.cc/47Q9-2UVL].

466. Stitzlein's exam findings showed tenderness, decreased strength, or decreased range of motion in her shoulders, right elbow, right forearm, wrists, hands, neck, back, knees, and ankles. Tr. 468. The doctor diagnosed Stitzlein with, among other things, "Sjogren's syndrome with keratoconjunctivitis sicca," an autoimmune disorder that causes dry eyes; unspecified fatigue; and a history of rheumatoid arthritis and lupus. Tr. 468. He prescribed physical therapy and noted that Stitzlein applied eye drops prescribed by her eye doctor. Tr. 469. At this visit, Stitzlein was taking Tylenol and Naproxen prescribed by her primary care doctor, and she said that she had tried Flexeril but stopped taking it because she didn't like the way it made her feel. Tr. 469. The rheumatologist advised that if Stitzlein continued to have back pain he would recommend a referral to a spine surgeon or pain management, and if she continued to have trouble with her knees, he would recommend an orthopedic evaluation. Tr. 469.

A January 2024 x-ray of Stitzlein's lumbar spine showed mild scoliosis and minor degenerative changes with stable spurring and no progressive disc space narrowing. Tr. 510.

*State agency opinions*[4]

In January 2023, Dana Schultz, M.D., reviewed Stitzlein's record. Tr. 64–67. Regarding Stitzlein's physical residual functional capacity (RFC),[5] Dr. Schultz determined that Stitzlein could sit, stand, and walk for up to six hours in an eight-hour workday. Tr. 65. She could lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 65. Dr. Schultz also found that Stitzlein had postural and environmental limitations. Tr. 66.

In March 2023, Steve McKee, M.D., reviewed Stitzlein's record and affirmed Dr. Schultz's findings. Tr. 92.

*Hearing testimony*

Stitzlein, who was represented by counsel, testified at the telephonic administrative hearing held in February 2024. Stitzlein stated that she last worked in 2022 in a factory. Tr. 40, 42. For that job, Stitzlein mostly stood or walked and she lifted and carried between 50 to 70 pounds. Tr. 42. Since then,

---

[4]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[5]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

she had tried to work a job putting pipes together, but it involved standing and it hurt her back. Tr. 41. She also worked for a short time as a receptionist, but the job ended because they no longer needed her. Tr. 42. Because it required a lot of sitting, Stitzlein wasn't sure if she could have continued to work at that job. Tr. 41. She explained that she can't sit or stand for long periods of time. Tr. 42.

Stitzlein testified that that she has a driver's license, she has no driving restrictions, and she regularly drives. Tr. 44. When asked what prevents her from working, Stitzlein said that it's hard for her to focus due to pain. Tr. 45. She experiences pain in her lower back down by her tailbone and rated her pain, on average, a seven-to-eight out of ten. Tr. 45–46. She estimated that she could stand for 10 to 15 minutes. Tr. 45. Pain interferes with her ability to sleep. Tr. 45.

Stitzlein stated that she has good days and bad days. Tr. 46. On bad days, her pain level is higher and she needs help getting out of bed. Tr. 46. This happens about four days a week. Tr. 46. She takes medication, applies pain patches, and uses a heating pad, which help. Tr. 46. Stitzlein attends physical therapy a few times a week, which also helps. Tr. 47. She sees a pain management doctor. Tr. 47. She does some household chores, but is limited due to back pain and having to change positions. Tr. 49.

When asked about her vision problems, Stitzlein stated that she has dry eyes. Tr. 50. This causes blurriness, and she sees spots. Tr. 50–51. She wears

8

glasses with strong bifocals. Tr. 51. When asked if she had vision problem while wearing her eyeglasses, Stitzlein said that sometimes, if she "get[s] the little spots," she will close her eyes and sit for a little bit. Tr. 51.

The ALJ discussed with the vocational expert Stitzlein's past work as an assembler and hand packager. Tr. 52. The ALJ asked the vocational expert to determine whether a hypothetical individual with Stitzlein's age, education, and work experience could perform Stitzlein's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 53–55. The vocational expert answered that such an individual could not perform Stitzlein's past work, but could perform the following jobs: merchandise marker, routing clerk, and small products assembler. Tr. 55.

### The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.
>
> 2. The claimant has not engaged in substantial gainful activity since May 9, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; fibromyalgia; Fuchs' corneal dystrophy; depressive disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically

9

equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can stand and/or walk four hours in an eight hour workday; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; and must avoid exposure to all hazards including unprotected heights, heavy machinery, and commercial driving. The claimant can understand, remember, and carryout simple instructions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; and can deal with occasional changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was … 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 9, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 19–29.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not

11

disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than

a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1. The ALJ did not err when evaluating Stitzlein's vision impairment*

Stitzlein argues that the ALJ erroneously "assess[ed] an RFC which does not address the Fuchs' Corneal Dystrophy that she found severe at Step 2." Doc. 9, at 12.[6] As a result, Stitzlein alleges, the RFC is "legally flawed as it

---

[6] In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

did not address all of Plaintiff's limitations." *Id*. But the ALJ's RFC assessment included a restriction that Stitzlein "must avoid exposure to all hazards including unprotected heights, heavy machinery, and commercial driving," Tr. 23, which, the ALJ explained, accounts for Stitzlein's "visual impairment," Tr. 26. So the ALJ accounted for Stitzlein's Fuchs' corneal dystrophy in the RFC assessment.

Next, Stitzlein argues that this limitation didn't adequately address Stitzlein's Fuchs' corneal dystrophy. Doc. 9, at 13. Stitzlein concedes that the ALJ "correctly notes" that Stitzlein "testified that she has chronically dry eyes and [occasionally] sees 'little spots' which require her to sit down [for a little bit]." *Id*. (citing Tr. 23). But, Stitzlein contends, she also testified that "her condition causes blurriness and spots which make it so that she 'can't see,' thus necessitating that she sit down and close her eyes until her vision returns." Tr. 50–51. While Stitzlein testified that her eye impairment causes blurriness, she also stated that as a result she has "pretty strong" "bifocals." Tr. 51. The ALJ asked about Stitzlein's vision while wearing her glasses, and Stitzlein stated that she "sometimes" sees "the little spots, the twinkle things I can't see, and I just keep my eyes closed and sit down for a little bit." Tr. 51. This is consistent with the ALJ's characterization of Stitzlein's testimony. Tr. 23.

Stitzlein argues that the ALJ ignored Stitzlein's "documented issues with glare and her need to avoid going out at night or being in environments with bright lights." Doc. 9, at 14. It is true that in March 2023, Stitzlein told

14

her eye doctor that she avoided bright lights and going out at night. Tr. 458. But at that visit Stitzlein's eye doctor prescribed new eyeglass lenses to treat Stitzlein's presbyopia (blurriness of near objects) and hyperopia (farsightedness). Tr. 461. And at the hearing, the ALJ specifically asked Stitzlein about her vision while wearing her eyeglasses and Stitzlein did not mention glare or an inability to go out at night. Tr. 50–51. She only mentioned that "sometimes … if [she] gets the little spots, the twinkle things [she] can't see," she closed her eyes and sat down "for a little bit." Tr. 51. Moreover, the ALJ observed that Stitzlein testified that she drove a vehicle and had no driving restrictions.[7] Tr. 24.

Stitzlein complains that the ALJ "failed to discuss any of the objective findings contained in [Stitzlein's eye doctor's notes], findings which confirm map dot fingerprint changes on the cornea, scattered vacuole of the lens bilaterally, and presbyopia and hyperopia (loss of near vision)." Doc. 9, at 14 (citing Tr. 460–61). But Stitzlein's presbyopia and hyperopia were treated with corrective lenses, Tr. 461, as the ALJ noted, Tr. 26, and the fact that Stitzlein's exam showed findings consistent with Fuchs' corneal dystrophy doesn't

---

[7]    In her reply brief, Stitzlein cites a function report she completed in April 2023, in which she stated that she drives "a little bit, but she was just diagnosed with lupus so her eyes have gotten a little bad, so most of the time she requires her husband or daughters to drive her." Doc. 12, at 1 (citing Tr. 405). But Stitzlein does not dispute that at the April 2024 administrative hearing she testified that she "normally" drove herself and had no driving restrictions. Tr. 44.

indicate what limitations would result due to this condition.[8] *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition] … says nothing about the severity of the condition."); *Baker v. Colvin*, No. 1:15-cv-910, 2016 WL 4128435, at *13 (N.D. Ohio Aug. 3, 2016) ("a diagnosis alone does not establish that a condition is disabling, nor does it establish the extent, if any, of the functional limitations caused by the condition."). Stitzlein has not shown that the ALJ's finding that there was a "lack of evidence of significant visual acuity or field limitations which are not addressed by corrective lenses," was unsupported.

Moreover, the ALJ commented that Stitzlein's treatment for Fuchs' corneal dystrophy was conservative, "consisting of prescribed lenses, with no indication of visual acuity or field limitations." Tr. 25; *see* Tr. 461 (Eye doctor's note prescribing Stitzlein corrective lenses, indicating that she should call if there were any changes and otherwise follow up with a yearly exam). Stitzlein claims that the ALJ's characterization of her treatment as "conservative" was "inappropriate" because Fuchs' corneal dystrophy "is a disease with 'no cure' and until it has progressed to the point of necessitating a corneal transplant, conservative treatment of symptoms and monitoring of progression is all that

---

[8]     Stitzlein cites a website that describes what map-dot-fingerprint dystrophy is, Doc. 9, at 14 n.1, but this is a different condition than what Stitzlein was diagnosed with, which was Fuchs' cornea dystrophy, Tr. 460–61. *See* https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/corneal-conditions/corneal-dystrophies [https://perma.cc/RM2N-AHVL] (describing different corneal conditions).

is medically indicated." Doc. 9, at 15 (citing https://www.lei.org.au/services/eye-health-information/fuchs-dystrophy/). But it is not for this Court to assess medical evidence or literature in the first instance. And, in any event, the website that Stitzlein sites in support states that "[i]n early stage Fuchs' dystrophy the condition is usually monitored," and "later, when the cornea begins to swell and blur the vision all the time, then a corneal transplant may be considered." *See* https://www.lei.org.au/services/eye-health-information/fuchs-dystrophy/ [https://perma.cc/47Q9-2UVL]. This does not show that the ALJ's characterization of Stitzlein's treatment as conservative was "inappropriate." Instead, it supports a finding that Stitzlein's condition was in the early, monitoring stages.

Stitzlein argues that the ALJ failed to explain how avoiding hazards is an "accommodation" for Stitzlein's eye condition. Doc. 9, at 15. But the ALJ's hazard restriction flows naturally from Stitzlein's eye condition; it did not require further explanation. *See, e.g., Walker v. Comm'r of Soc. Sec.*, No. 1:21-cv-1474, 2022 WL 2612244, at *11 (N.D. Ohio May 17, 2022) (finding that the ALJ's RFC accommodated the claimant's one-eye blindness "by avoiding exposure to hazards, driving, and jobs that require depth perception"), *report and recommendation adopted*, 2022 WL 4479922 (N.D. Ohio Sept. 27, 2022). Indeed, Stitzlein does not identify a restriction that she believes the ALJ should have assessed.

17

Meanwhile, no medical provider assessed any vision restrictions; the consultative examiner in December 2022 found that Stitzlein's eyesight was 20/25. In her reply brief, Stitzlein points out that the state agency reviewers did not find her Fuchs' corneal dystrophy to be a severe impairment and thus did not assess limitations for it. Doc. 12, at 2. She submits that "without the benefit of any medical expertise or guidance, the ALJ appears to have simply guessed as to the impact of [Stitzlein's] severe visual impairments." Doc. 9, at 16. But the Sixth Circuit "ha[s] previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). Stitzlein complains that the ALJ's RFC assessment that Stitzlein avoid hazards was "not a new limitation" because "[i]t was previously made for purposes of [Stitzlein's] lumbar disc disease of the lumbar spine and fibromyalgia." Doc. 12, at 2. But Stitzlein doesn't cite legal authority stating that an ALJ is forbidden from using a limitation to cover multiple conditions.

In short, the ALJ at step two found Stitzlein's Fuchs' cornea dystrophy to be a severe impairment, Tr. 20; accounted for this condition in her RFC assessment, Tr. 26; and explained why she did not find Stitzlein to be more limited, Tr 26. Stitzlein has not shown that the ALJ erred or that her decision is unsupported by substantial evidence.

*2. The ALJ did not err when evaluating Stitzlein's reports of symptoms*

Stitzlein argues that the ALJ failed to evaluate Stitzlein's allegations in accordance with Social Security Ruling 16-3p. Doc. 9, at 17.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

Stitzlein first argues that the "ALJ applied an incorrect standard by evaluating whether [Stitzlein's] allegations were *entirely consistent* with the evidence of record rather [than] the standard set forth in the regulations, i.e., whether plaintiff's allegations can *reasonably be accepted as consistent* with

the evidence of record." Doc. 9, at 17 (emphasis added, internal quotation marks omitted) (citing *Deville v. Comm'r of Soc. Sec.*, No. 1:23-cv-578, 2024 WL 4249128, at \*6 (W.D. Mich. Sept. 20, 2024), and Soc. Sec. Ruling 16-3p). The fact that the ALJ stated the oft-quoted conclusion that Stitzlein's statements were "not entirely consistent with" the record evidence, Tr. 25, does not mean that the ALJ applied an incorrect standard. It simply means that the ALJ found Stitzlein's statements to be inconsistent with the record, which is what the regulations require. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at \*2 ("[W]e consider all of the individual's symptoms, … and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."). Moreover, in *Deville*, the court relied on its conclusion in another case, *Mogdis v. Comm'r of Soc. Sec.*, No. 1:18-cv-82, 2019 WL 652571, at \*4 (W.D. Mich. Feb. 14, 2019), which held that the ALJ's use of the words "not entirely consistent" indicated that the ALJ applied the wrong standard. *See Deville*, 2024 WL 4249128, at \*6. But "*Mogdis* is an outlier." *Kim W. v. Comm'r of Soc. Sec.*, No. 2:24-cv-12648, 2025 WL 3118954, at \*10 (E.D. Mich. Oct. 3, 2025), *report and recommendation adopted*, No. 24-cv-12648, 2025 WL 3113622 (E.D. Mich. Nov. 6, 2025). Indeed, "the Sixth Circuit has regularly affirmed decisions where the ALJ used the exact [*not entirely consistent*] language that was used in both *Mogdis* and this case." *Id.* (citing cases).

As for the substance of the ALJ's decision, the ALJ explained why she discounted Stitzlein's statements about her physical limitations as follows:

> Regarding the claimant's physical impairments, the record reflects a history of degenerative disc disease of the lumbar spine, fibromyalgia, and Fuchs' corneal dystrophy. At no time during the period at issue did the claimant require inpatient treatment or invasive interventions for any of the claimant's alleged impairments with wholly conservative treatment noted throughout the period at issue. Physical examination findings did not support the extent of limitation alleged during testimony, consisting primarily of intermittent joint tenderness. However, there is no support in the record for the extent of the claimant's alleged lifting restriction nor the claimant's sitting, standing, and walking abilities as reported during testimony. With respect to the claimant's visual allegations, again treatment was wholly conservative consisting of prescribed lenses, with no indication of visual acuity or field limitations. As for the claimant's alleged fibromyalgia, rheumatology notes reflected orders for additional evaluative testing, but no indication that the testing was obtained. Therefore, the undersigned having considered the claimant's subjective reports evaluated against the treatment evidence of record, finds the claimant able to perform [reduced] light work with [additional limitations].

Tr. 25.

Stitzlein contends that the ALJ only cited Stitzlein's physical exam findings, Doc. 9, at 18, Doc. 12, at 4, but the ALJ also cited Stitzlein's conservative treatment and failure to follow up with testing, Tr. 25, *see* 20 C.F.R. § 404.1529(c)(3)(iv),(v) (the ALJ considering the claimant's treatment). The ALJ also explained that she limited Stitzlein to occasional climbing, rather

than the frequent climbing that the state agency reviewers had assessed, "in consideration of [Stitzlein's] subjective reports during testimony." Tr. 26, 48. And the ALJ adopted the consultative examiner's findings that Stitzlein could stand and walk for four, rather than six, hours in an eight-hour workday. Tr. 26; *see* 20 C.F.R. § 404.1529(c)(1) (the ALJ considers medical opinion evidence).

Stitzlein contends that her "severe fibromyalgia is of such a nature that it does not lend itself to objective observation other than the joint tenderness the ALJ concedes is documented in the record." Doc. 9, at 19. But the ALJ observed that Stitzlein failed to follow through with further evaluations, Tr. 25, which is an appropriate reason to discount Stitzlein's reports of symptom severity. *See, e.g.*, *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (claimant's failure to seek treatment undercut complaints of disabling symptoms). Moreover, "[u]nder [the] regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2.

Stitzlein has not shown that the ALJ erred when evaluating her reports of symptoms.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.


Dated: December 10, 2025

> /s/ James E. Grimes Jr.
> James E. Grimes Jr.
> U.S. Magistrate Judge


**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).